UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PREET M. SINGH,<br><br>  Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>  Defendants. | Case No. 14-cv-02008-EDL<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 12 |

Before the Court is Defendant's Motion to Dismiss Plaintiff's employment discrimination case. After extending the briefing schedule to allow Plaintiff, who is proceeding pro se, additional time to oppose this motion, the Court held a hearing on January 13, 2015. For the reasons stated at the hearing and in this Order, Defendant's Motion to Dismiss is granted without leave to amend.

**Allegations from the complaint**

Plaintiff alleges that he was assigned as a regular Supervisor, Customer Service in Vacaville at the Cernon Post Office and in the Main Post Office from October 2010 to March 2012. Compl. ¶ 12. During his employment, Plaintiff worked under the supervision of Darryl Wright, Acting Manager, an employee and agent of the United States Postal Service. Compl. ¶ 14.

Plaintiff alleges that Wright's management style consisted of threats and harassment. Compl. ¶ 15. In every conversation with Plaintiff, Wright told Plaintiff to follow instructions or receive a letter of warning. Compl. ¶ 15. Plaintiff complained about Wright to the Acting Post Master Julie Ortiz and the union representative Susan Wycoff. Compl. ¶ 15. On March 7, 2011, Plaintiff met with Wright and his union representative regarding Wright's conduct. Compl. ¶ 15. Plaintiff alleges that the Post Master had full knowledge of Wright's threats, harassment and unprofessional attitude toward Plaintiff. Compl. ¶ 15. After the meeting, Wright stopped using the threat about a letter of warning, and instead told Plaintiff that: "I will choose another route if I

need to deal with you." Compl. ¶ 15. Plaintiff alleges that this statement is a direct message to Plaintiff that placed Plaintiff under fear and stress. Compl. ¶ 15. Plaintiff alleges that he heard Wright say: "I don't care if he is an Indian attorney. I will screw supervisor Singh." Compl. ¶ 15.

Plaintiff alleges that on another occasion, Wright called Plaintiff on the phone and told him to watch the lobby or he would get a letter of warning, and then Wright started laughing on the phone. Compl. ¶ 16. Plaintiff alleges that another person also laughed. Compl. ¶ 16. Plaintiff experienced stress because "insulting him had become good past time [sic] for Wright and Singh was made a laughing stock." Compl. ¶ 16. Plaintiff alleges that Wright put Plaintiff down because of his national origin, appearance and accent. Compl. ¶ 16.

Plaintiff alleges that Wright hated Plaintiff from the first day that they met. Compl. ¶ 17. Wright worked as an acting manager and he promoted a mail carrier to the position of acting Supervisor to level 22. Compl. ¶ 17. Plaintiff questioned Wright's authority to give this promotion, and Plaintiff asked Wright to send Plaintiff an email confirming the promotion of the mail carrier. Compl. ¶ 17. Wright refused to send the email because he said that he did not need to reduce his word to writing. Compl. ¶ 17. After that, Plaintiff alleges that he was subject to daily harassment. Compl. ¶ 17.

Plaintiff also alleges that Wright was disrespectful toward other employees whose first language was not English. Compl. ¶ 41. For example, Plaintiff stated that a mail carrier's father died, and the employee went to another state for the funeral. Compl. ¶ 41. Wright ordered Plaintiff to call the employee and tell her that he would consider that she abandoned her job if she did not report to work, and then asked Plaintiff if he understood the word "abandoning." Compl. ¶ 41.

Plaintiff alleges that Wright's supervisors Post Master RJ Santos and Acting Post Master Julie Ortiz were notified of Wright's conduct in December 2010. Compl. ¶ 30. Union representative Wycoff was notified of Wright's harassing conduct on March 7, 2011. Compl. ¶ 31.

On March 23 and 24, 2011, Wright falsely accused Plaintiff of time falsification of four letter carriers and attempted to remove him from the Postal Service. Compl. ¶ 18. Plaintiff states

that the allegations were unfounded, but damaged Plaintiff's reputation. Compl. ¶ 19. Plaintiff was placed on administrative leave for five months by Wright. Compl. ¶ 19. Plaintiff was subject to an internal investigation. Compl. ¶ 20. The investigation was "brutal" and damaged Plaintiff's "professional reputation, financial and physical health." Compl. ¶ 20. On March 25, 2011, Plaintiff was put on Administrative Leave for five months. Compl. ¶ 33.

Plaintiff alleges that Wright intentionally falsified Plaintiff's clock rings for more than 74 times during the period from October 2010 through March 2011, which resulted in non-payment of wages and emotional distress. Compl. ¶¶ 22, 37-39. Plaintiff alleges that the Postal Service improperly refused to investigate the falsification of Plaintiff's clock rings by Wright because he is a United States citizen. Compl. ¶ 23. Instead, Plaintiff was demoted, and Wright was promoted. Compl. ¶ 24.

According to the July 27, 2011 letter of demotion, Defendant Donahoe stated that on March 23, 2011, Plaintiff had changed the times of four carriers before they came into the office. Compl. ¶ 25. Plaintiff alleges that he changed the times of the carriers when they reached the office. Compl. ¶ 26. Plaintiff alleges that he only changed the timing of carriers after they filled out the proper form and with the approval of Wright. Compl. ¶ 27.

On August 2, 2011, Plaintiff notified Manager, Post Office Operations ("MPOO") Michael Mirides of Plaintiff's incorrect clock rings. Compl. ¶ 34. Mirides assured Wycoff through an August 4, 2011 email that he could take corrective action against Wright, but he failed to do so. Compl. ¶ 34. Plaintiff sent numerous emails to MPOO Jagdeep Grewal regarding the incorrect clock rings, but no action was taken against Wright. Compl. ¶ 35.

Plaintiff had worked for the Postal Service as a Level 17 employee. Compl. ¶ 44. Before August 13, 2011, Plaintiff had been demoted to a Level 6 employee, but he never reported and never worked at that level. Compl. ¶ 45. Plaintiff settled his complaint against the Postal Service and kept his Level 17 position. Compl. ¶ 46. Plaintiff alleges that he later learned that he was in fact demoted in violation of the settlement agreement. Compl. ¶ 47. Plaintiff states that this demotion impacted his selection as Supervisor Distribution & Operations in Oakland in August 2011. Compl. ¶ 48.

3

In November 2011, Post Master John Hicks in Vacaville initiated an action against Plaintiff for not dispatching a container of mail from the Business Mail Entry Unit ("BMEU") and using two mail carriers to sort P.O. Box mail because Plaintiff did not have clerks to do this work. Compl. ¶ 50. Although Plaintiff alleges that there was a reason he processed the mail this way, he was held accountable for using mail carriers in this emergency situation when Plaintiff had no available clerks. Compl. ¶ 50. Plaintiff was given a suspension letter on December 30, 2011 which remained in his records for three months. Compl. ¶ 50. Plaintiff states that another supervisor used mail carriers in this way in a non-emergency situation and corrective action was not taken against her. Compl. ¶ 50.

On January 8, 2012, three carriers came to the post office after 6:00 p.m. and Plaintiff emailed the Post Master and the morning supervisor. Compl. ¶ 51. However, the morning supervisor, Darryl Bailey, changed the carriers' time sheet to be before 6:00 p.m. on January 18, 2012 without checking with the carrier or requiring the proper form. Compl. ¶ 51. Plaintiff states that no corrective action was taken against Bailey for falsifying the time records. Compl. ¶ 51. On September 14, 2012, Plaintiff sent a complaint to the Office of the Inspector General, which referred Plaintiff's complaint to the District Manager and Human Resources Manager, but no action was taken against Wright. Compl. ¶ 36.

**Procedural history**

On July 25, 2011, Plaintiff requested an appointment with an EEO counselor and the Postal Service received Plaintiff's Information for Pre-Complaint Counseling on August 8, 2011. Andrews Decl. ¶ 3; Ex. 1. This case was designated No. 4F-956-0127-11. Id. In this complaint, Plaintiff alleged that Wright harassed him and discriminated against him, and that he was demoted on July 27, 2011 because of his national origin and race, and in retaliation for invoking a complaint process. Id. Ex. 1. Plaintiff entered into a settlement agreement with the Postal Service regarding the demotion decision on August 11, 2011, which stated that the "parties mutually agree the Notice of Proposed Adverse Action - Reduction in Grade and/or Pay dated June 2, 2011, is reduced to a Letter of Warning in Lieu of a 7-Day Suspension. . . . The parties agree that Preet Singh will report to the Vacaville CA Post Office on August 12, 2011, at his normal reporting

4

time, ready, willing and able to perform the duties of his assigned position." Id.; Ex. 2. Also pursuant to the August 2011 settlement agreement, Plaintiff agreed to voluntarily withdraw any outstanding EEO complaints or appeals, including No. 4F-956-0127-11. Id. Plaintiff also agreed that he would "not litigate or re-litigate in any forum . . . any claims arising from the Notice of Proposed Adverse Action - Reduction in Grade and/or Pay . . . ." Id. On August 11, 2011, Plaintiff signed a Withdrawal of Complaint of Discrimination, requesting withdrawal of No. 4F-956-0127-11. Id.

On May 28, 2013, Plaintiff filed a formal EEO complaint, which was designated No. 4F-956-0047-13. Andrews Decl. ¶ 4; Ex. 3. He alleged discrimination based on race, national origin and color, and on retaliation. Id. The complaint alleged that Wright falsified Plaintiff's time sheet on 74 occasions, causing Plaintiff to lose pay. Id. Plaintiff also alleged that Wright falsely accused Plaintiff of falsifying the timesheets of four letter carriers in March 2011. Id. Plaintiff also alleged that Wright made unprofessional and harassing statements such as those alleged in this case. Id. Plaintiff also alleges that the Postal Service demoted him to a Level 6 employee, but that he never actually worked as a Level 6 employee because of the settlement agreement. Id. Plaintiff also alleges that he was subject to discrimination for using mail carriers to sort the P.O. Box mail but another employee was not subject to corrective action for this conduct. Id.

On July 23, 2013, the Postal Service issued a Final Agency Decision dismissing the EEO complaint, 4F-956-0047-13. Compl. ¶ 6. The EEOC affirmed the dismissal on January 27, 2014. Id. Plaintiff filed this lawsuit on May 1, 2014.

**Legal Standard**

1.  **Rule 12(b)(1) - Motion to Dismiss for Lack of Subject Matter Jurisdiction**

    A jurisdictional challenge may be facial or factual. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir.2004). Where, as here, the attack is factual, "the court need not presume the truthfulness of the plaintiff's allegations." Safe Air for Everyone, 373 F.3d at 1039. In resolving a factual dispute as to the existence of subject matter jurisdiction, a court may review extrinsic evidence beyond the complaint without converting a motion to dismiss into one for summary judgment. See id.; McCarthy v. United States, 850 F.2d 558, 560 (9th Cir.1988) (holding

that a court "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction"). Once a party has moved to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the opposing party bears the burden of establishing the Court's jurisdiction. See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994); Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010).

2. **Rule 12(b)(6) - Motion to Dismiss for Failure to State a Claim**

A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). The reviewing court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." Lazy Y Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).

A court need not, however, accept as true the complaint's "legal conclusions." Iqbal, 129 S. Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950. Thus, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

Courts must then determine whether the factual allegations in the complaint "plausibly give rise to an entitlement of relief." Id. Though the plausibility inquiry "is not akin to a probability requirement," a complaint will not survive a motion to dismiss if its factual allegations "do not permit the court to infer more than the mere possibility of misconduct . . . ." Id. at 1949 (internal quotation marks omitted) & 1950. That is to say, plaintiffs must "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

**Discussion**

1. **Plaintiff failed to exhaust his administrative remedies for his Title VII claims of discrimination and retaliation**

Title VII provides the exclusive remedy for discrimination claims in federal employment. See, e.g., Brown v. General Services Admin., 425 U.S. 820, 835 (1976) (". . . the established

6

principle leads unerringly to the conclusion that s 717 of the Civil Rights Act of 1964, as amended, provides the exclusive judicial remedy for claims of discrimination in federal employment."); see also Boyd v. United States Postal Serv., 752 F.2d 410, 414 (9th Cir. 1985) (citing Brown, 425 U.S. at 835); Nolan v. Cleland, 686 F.2d 806, 815 (9th Cir. 1982) (citing Brown, 425 U.S. at 835 and stating: "The holding of Brown, supra, is controlling on this issue and we feel that such holding cannot be circumvented where the factual predicate for Nolan's due process claim is the discrimination which is the basis of her Title VII claim. The threshold question in Nolan's action is the constructive discharge claim and she would not be able to recover on the due process claim if she were successful on the constructive discharge claim due to the identical factual basis, and, therefore, the district court correctly dismissed the due process count and approached the action solely as a Title VII action pursuant to Brown, supra."). Moreover, under Title VII, a federal employee must exhaust his administrative remedies as a precondition to filing suit. Brown, 425 U.S. at 832 ("Initially, the complainant must seek relief in the agency that has allegedly discriminated against him."); see also Cooper v. Bell, 628 F.2d 1208, 1211 (9th Cir.1980) (Title VII "contemplates the invocation of administrative remedies as a condition precedent to litigation" by a federal employee) (citing Brown). An aggrieved federal employee must contact an EEO counselor within 45 days of the event giving rise to the complaint. 29 C.F.R. § 1614.105. This time limit is "a statute of limitations and it is subject to waiver, estoppel and equitable tolling." Boyd v. United States Postal Serv., 752 F.2d 410, 414-15 (9th Cir. 1985).

Here, Defendant argues that Plaintiff abandoned and thus failed to exhaust his first administrative claim when he settled his July 2011 EEO claim of discrimination occurring from October 2010 to March 2012 with Defendant and withdrew Case No. 4F-956-0127-11. See, e.g., Rivera v. United States Postal Serv., 830 F.2d 1037, 1039 (9th Cir. 1987) ("To withdraw is to abandon one's claim, to fail to exhaust one's remedies."). While Defendant may be correct, the cases cited by Defendant do not squarely address the question of whether withdrawal of an EEO claim pursuant to a settlement agreement constitutes abandonment of claims for purposes of exhaustion. See Rivera, 830 F.2d at 1039 (addressing exhaustion where the plaintiff filed an appeal of an adverse ruling on his administrative complaint by the United States Postal Service but

cancelled the appeal two months later and filed suit in district court); <u>Vinieratos v. United States</u>, 939 F.2d 762 (addressing exhaustion where the plaintiff abandoned and obstructed his EEO claim); <u>Foley v. Donahoe</u>, 2012 WL 2838758 (N.D. Cal. July 10, 2012) (finding that administrative remedies were not exhausted where a plaintiff waited 42 months to contact an EEO counselor); <u>Ewing v. Donahoe</u>, 2012 WL 2501029 (E.D. Cal. June 27, 2012) (addressing failure to exhaust administrative remedies based on a prior case with the same issues); <u>Jackson v. United States Department of Labor</u>, 2008 WL 539925 (E.D. Cal. Deb. 25, 2008) (not addressing exhaustion). However, Plaintiff agreed in the settlement document not to pursue any further litigation of the demotion claim in 4F-956-0127-11, so his claims on that basis are barred here regardless of whether he exhausted. See <u>Jackson</u>, 2008 WL 539925, at *2 (noting that the plaintiff signed a settlement agreement to dispose of his EEO claim and withdrew the claim, so allegations in the legal complaint involving the EEO claims were precluded).

Plaintiff's second EEO complaint, made in 2013, contains some claims overlapping with his first EEO complaint. The latest discriminatory and/or retaliatory acts alleged in Plaintiff's 2013 EEO complaint occurred in March 2012. Compl. ¶ 13. Plaintiff did not contact an EEO counselor for those allegations until April 19, 2013, which was well beyond the 45-day time limit. Compl. ¶ 6; Andrews Decl. ¶ 3. Thus, those claims were not exhausted, so the Court lacks jurisdiction.

Plaintiff argues that because he followed USPS Publication 553 by reporting the alleged discrimination to his managers, the exhaustion requirement has been met. Publication 553 provides information regarding what harassment is, and how to report it to a supervisor. King Decl. Ex. 1. Publication 553 also says that employees have the right to pursue a complaint through the EEO process, and must do so within the time limits in that process. <u>Id.</u> at 10. Plaintiff has not provided any authority that complaining to a manager or to Human Resources is a substitute for the EEO process. See <u>Davis v. Potter</u>, 2005 WL 1513161, at *3 (N.D. Cal. June 20, 2005) ("Plaintiff's verbal complaints, without follow-up in the form of any informal requests for counseling or formal EEO complaints, and the January 3, 2004 letter from his counsel did not engage the administrative process so that the EEOC or the USPS could investigate and address his

8

allegations of discrimination.").

Finally, Plaintiff argues that his claims survive dismissal based on tolling. He argues that because he complained to his supervisors and they assured him that they would investigate, he is entitled to equitable estoppel. Equitable estoppel allows tolling of the statute of limitations when the plaintiff has been misled by the defendant, as opposed to his own excusable ignorance. See Johnson v. Henderson, 2001 WL 1112116, at *7 (N.D. Cal. Sept. 14, 2001) (citing Christison v. Alvarez, 31 F.Supp.2d 787, 790 (D.Mont. 1999) (citing Irwin v. Department of Veteran Affairs, 498 U.S. 89, 96 (1990)). The "principles of equitable estoppel ... do not extend to what is at best a garden variety claim of excusable neglect." Id. Equitable estoppel turns on the consideration of a non-exhaustive list of factors, including: (1) the plaintiff's actual and reasonable reliance on the defendant's conduct or representations; (2) evidence of improper purpose on the part of the defendant, or of the defendant's actual or constructive knowledge of the deceptive nature of its conduct; and (3) the extent to which the purposes of the limitations period have been satisfied. See Santa Maria v. Pacific Bell, 202 F.3d 1170, 1176 (9th Cir. 2000). Plaintiff has not identified any specific representations or conduct by Defendant that would constitute estoppel, or would prevent Plaintiff from timely engaging in the EEO process. Plaintiff references an August 4, 2011 email from Mirides, which Plaintiff characterizes as a promise to take corrective action against Wright. Opp. at 6; Andrews Decl. Ex. 3 at Ex. 19. However, the email was sent before the August 11, 2011 settlement agreement, and would not have prevented Plaintiff from engaging in the EEO process as to his complaints that arose thereafter.

Plaintiff also argues that he is entitled to equitable tolling because he filed an EEO complaint, citing Addison v. California, 21 Cal.3d 313 (1978). In Addison, the state court applied equitable tolling in the plaintiff's state case where the plaintiff had reasonably pursued a concurrent federal remedy, which had been dismissed for lack of jurisdiction. Id. at 321 ("In our view, the balance in this case must be struck in plaintiffs' favor. If the tolling doctrine were not applied, plaintiffs would be denied a hearing on the merits of their claim. The doctrine's application, on the other hand, should not substantially undermine the policy of prompt resolution of claims. As we have noted, plaintiffs filed their state court action within nine months after their

9

right to sue arose and by reason of the federal suit, defendants were fully notified within the six-month statutory period of plaintiffs' claims and their intent to litigate. Defendants were informed at all times of the nature of plaintiffs' claims. Any delay resulting from plaintiffs' original erroneous choice of forum was minimal."). Here, however, Plaintiff has not exhausted his administrative claims and did not timely litigate another parallel proceeding in any court, and Plaintiff's first EEO claim was not sufficiently similar to give Defendant notice as to all of Plaintiff's claims, so Addison does not support application of equitable tolling.

### 2. Plaintiff has failed to state a claim for breach of the settlement agreement

In his claim for breach of the settlement agreement, Plaintiff alleges that he worked as a Level 17 employee, and that by letter of July 27, 2011, he was demoted to a Level 6 employee. Compl. ¶¶ 25, 65-66. The parties reached a settlement agreement on August 11, 2011, which stated that the demotion would be reduced to a letter of warning. Andrews Decl. Ex. 2. The demotion was cancelled on the same day it was to take effect. Andrews Decl. Ex. 3 at Ex. 30, 31, Boxes 1, 79. Plaintiff alleges that when the matter was settled, he kept his Level 17 position and that he never worked at the lower level. Compl. ¶¶ 45-46, 67; Andrews Decl. Ex. 3 at ¶ 10. Plaintiff alleges that he found out later than he was in fact demoted in violation of the settlement agreement and he wants Defendant to correct his personnel record. Compl. ¶¶ 68-69. The settlement agreement, however, does not indicate that Defendant would purge Plaintiff's personnel record or otherwise eliminate any reference to the July 2011 demotion. Plaintiff also argues that he signed the settlement agreement under duress, but alleges no facts to support that that argument. Thus, Plaintiff's claim for breach of the settlement agreement is dismissed.

Moreover, even if there had been a breach of the settlement agreement, a claim for breach would be time-barred because Plaintiff failed to notify the Postal Service of a breach within 30 days. See 29 C.F.R. § 1614.504(a) ("If the complainant believes that the agency has failed to comply with the terms of a settlement agreement or decision, the complainant shall notify the EEO Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance."); Lin v. Potter, 2011 WL 233053, at *11-12 (N.D. Cal. Jan. 22, 2011) ("Failure to seek the mandatory review required by the C.F.R. bars

10

review in federal court."). Here, the alleged breach of the settlement agreement occurred sometime in August 2011, and Defendant does not have any record of Plaintiff notifying the EEO office of an alleged breach within the required time period. Andrews Decl. ¶ 3. Plaintiff does not contend otherwise.

### 3. Plaintiff's claim for lost wages and overtime is time-barred

In his complaint, Plaintiff alleges that Defendant failed to pay Plaintiff his wages and overtime because Wright wrongfully altered Plaintiff's time records. Compl. ¶ 61. The Fair Labor Standards Act (FLSA) applies to Postal Service workers. See 29 U.S.C. § 203(e)(2)(B). Under the FLSA, an action for unpaid wages or overtime must be commenced "within two years after the cause of action accrued, . . . , except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a).

Here, Plaintiff seeks wages and overtime for the period from October 25, 2010 through March 24, 2011. Compl. ¶ 37. Plaintiff filed this lawsuit on May 1, 2014, more than three years after the most recent alleged denial of pay. Therefore, his claim for lost wages and overtime is time-barred. As stated above, Plaintiff has not established that he is entitled to equitable estoppel of equitable tolling in this case.

### 4. Plaintiff's claim for intentional infliction of emotional distress is dismissed

To the extent that Plaintiff's intentional infliction of emotional distress claim is based on the allegedly discriminatory actions taken by Defendant, that claim is precluded by Title VII as the exclusive remedy for claims of race and national origin discrimination arising out of federal employment. See Brown, 425 U.S. at 834-35 ("We have consistently held that a narrowly tailored employee compensation scheme pre-empts the more general tort recovery statutes.").

Plaintiff's intentional infliction of emotional distress claim is also subject to dismissal because Plaintiff did not submit a tort claim prior to bringing this lawsuit. Herbst Decl. ¶¶ 4, 6. The Federal Tort Claims Act (FTCA) provides a claim against the United States for persons injured by tortious activity of a federal employee. 28 U.S.C. § 1346(b). The FTCA requires a tort claimant to file an administrative claim with the appropriate federal agency before filing suit and

11

either receive a final denial in writing or wait six months to elapse with no final determination. 28 U.S.C. § 2675(a). This requirement is jurisdictional. See Burns v. United States, 764 F.2d 722, 723 (9th Cir. 1985) ("The claim requirement of section 2675 is jurisdictional in nature and may not be waived.").

**Conclusion**

Defendant's Motion to Dismiss is granted without leave to amend.

**IT IS SO ORDERED.**

Dated: Jan. 20, 2015

ELIZABETH D. LAPORTE
United States Magistrate Judge